UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LR 9004-2(c)**

**McCARTER & ENGLISH, LLP**
Clement J. Farley, Esq.
Geoffrey E. Lynott, Esq.
Phillip S. Pavlick, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070
Email: cfarley@mccarter.com
       glynott@mccarter.com
       ppavlick@mccarter.com

*Attorneys for the Chapter 7 Trustee*

| | |
|---|---|
| In Re:<br><br>ZAYAT STABLES, LLC,<br><br>               Debtor. | Chapter 7<br><br>Case No.:  20-20524 (VFP) |
| JEFFREY T. TESTA, solely in his capacity as the Chapter 7 Trustee of ZAYAT STABLES, LLC<br><br>               Plaintiff,<br><br>       vs.<br><br>MCMAHON OF SARATOGA THOROUGHBREDS, LLC,<br><br>               Defendant. | Adv. Pro. No.:  _____ |

## ADVERSARY COMPLAINT

Plaintiff, Jeffrey T. Testa ("Trustee"), solely in his capacity as the duly-appointed Chapter

7 Trustee of Zayat Stables, LLC ("Debtor"), by and through his attorneys, McCarter & English,

LLP, hereby alleges as and for his Adversary Complaint against Defendant, McMahon of Saratoga

Thoroughbreds, LLC ("McMahon"), as follows:

## PRELIMINARY STATEMENT

1.    As set forth in greater detail below, the Debtor sold one of its horses to McMahon

for a price that was well below fair market value, thereby diminishing the Debtor's assets and

crippling its ability to generate proceeds to satisfy its creditors.

2.    To make matters worse, the sale of the Debtor's horse was deliberately concealed

from the Debtor's largest creditor to prevent that creditor from exercising its rights as a secured

creditor under the parties' loan documents.

3.    The aforementioned misconduct caused the Debtor to default under its loan

agreement with its largest creditor.  Thereafter, that creditor sued the Debtor to recover damages

under their loan documents and obtained a judgment in excess of $24 million, which drove the

Debtor into bankruptcy.

4.    The Trustee now seeks to avoid this transfer as both an actually fraudulent and a

constructively fraudulent transfer.

## JURISDICTION AND VENUE

5.    The United States Bankruptcy Court for the District of New Jersey ("Bankruptcy

Court") has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §

1334(b).

6.    The Bankruptcy Court has personal jurisdiction over Defendant pursuant to Rule

7004(f) of the Federal Rules of Bankruptcy Procedure.

7.    This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.    Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a).

2

ME1 42312018v.2

9.      The predicates for the relief requested herein are from state law and §§ 544, 548, and 550 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## THE PARTIES

10.     On September 14, 2020 ("Petition Date"), an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, "Bankruptcy Code"), was filed against the Debtor in the Bankruptcy Court.

11.     The Court entered the Order for Relief on October 9, 2020.

12.     On that same day, October 9, 2020, the Office of the United States Trustee for the District of New Jersey appointed Jeffrey T. Testa, Esq., as the interim Chapter 7 Trustee of the Debtor.

13.     The Trustee is the duly-appointed, qualified, and serving Chapter 7 Trustee of the Debtor.

14.     Defendant, McMahon of Saratoga Thoroughbreds, LLC, is a New York limited-liability company, with its principal place of business at 180 Fitch Road, Saratoga Springs, New York 12886.

## FACTUAL BACKGROUND

### General Background

15.     The Debtor was a thoroughbred horseracing organization that was formed in 2005.

16.     The Debtor was a Delaware limited-liability company with a principal place of business at 401 Hackensack Avenue, 7th Floor, Hackensack, New Jersey 07601.

17.     At all relevant times, Ahmed Zayat was the sole member of the Debtor.  Other of Mr. Zayat's family members were also involved in the company.

3

**The Debtor Pledges its Equine Collateral in Connection with MGG's loan**

18.     Upon information and belief, in the Spring 2016, Mr. Zayat met with MGG Investment Group LP ("MGG") for the purposes of refinancing the Debtor's existing debt and obtaining additional financing to fund equine acquisitions for the Debtor's benefit.

19.     Thereafter, on or about July 26, 2016, the Debtor entered into a $35-million financing arrangement with affiliates of MGG ("MGG Loan").

20.     In connection therewith, the Debtor executed a Financing Agreement.

21.     As a condition precedent to the Financing Agreement going into effect, the Debtor had to execute a Pledge and Security Agreement, whereby the Debtor pledged all of its assets as collateral for the loans.

22.     Mr. Zayat executed the Financing Agreement and the Pledge and Security Agreement on behalf of the Debtor (collectively, "MGG Loan Documents").

23.     Under the Financing Agreement, "Collateral" is defined as:

> [A]ll of the property and assets and all interests therein and proceeds thereof now owned or hereafter acquired by any Person upon which a Lien is granted or purported to be granted by such Person as security for all or any part of the Obligations, including, without limitation, all Equine Collateral.

24. "Equine Collateral" is defined under the Financing Agreement as:

> [A]ll horses, stallions, mares, weanlings, foals, thoroughbred bloodstock and/or stallion shares, breeding rights, lifetime breeding rights and/or fractional interests therein, their offspring and young, both born and unborn, and/or fractional interests therein, stallion seasons and shares, and any other interests in any of the foregoing, owned by the Borrower or any of its Subsidiaries, howsoever classified, whether now owned or hereafter acquired, and including all substitutions and replacements thereof.

4

25.     Consistent with the Financing Agreement, the Pledge and Security Agreement executed on July 26, 2016, provides that the Debtor pledges, as security for the loan, "all Equine Collateral."

26.     Pursuant to § 6.01 of the Financing Agreement, the Debtor represented that it had "good and marketable title to, valid leasehold interests in, or valid licenses to use, all property and assets material to its business (including the Equine Collateral), free and clear of all Liens, except Permitted Liens."

27.     On occurrence of an Event of Default, MGG had the right to terminate its financing commitments under the loan documents, accelerate all sums due and payable pursuant to the parties' financing arrangement, and exercise all other remedies provided by law and the loan documents.

28.     On September 30, 2016, the Debtor and MGG executed the first amendment to the Financing Agreement whereby MGG provided the Debtor with $5 million of the delayed-draw term loan.

**The Debtor Sold Solomini to McMahon for Less than Fair Market Value and Less Than Reasonably Equivalent Value**

29.     The thoroughbred Solomini was property of the Debtor.

30.     In January 2018, the Debtor sold 50% of its ownership interest in its horse, Solomini, to Orpendale Unlimited Company ("Orpendale") for $800,000 (the "January 2018 Transfer").

31.     The Debtor transferred the $800,000 in sale proceeds to MGG

32.     Thereafter, on or about December 3, 2019, the Debtor sold its remaining 50% interest in Solomini and Orpendale sold its 50% interest in Solomini in a private sale to McMahon for $250,000 ("Solomini Transfer").

5

33.     The sale of the Debtor's remaining 50% interest in Solomini to McMahon was for less than reasonably-equivalent value.  The July 2019 independent appraisal commissioned by the Debtor determined that Solomini was worth in excess $3 million.

34.     Another appraisal conducted in December of 2019, roughly contemporaneously with the Solomini Transfer, valued the Debtor's 50% interest in Solomini at $500,000.

**The Debtor Defaults on the MGG Loan**

35.     On September 30, 2019, the Debtor failed to pay a principal installment due under the MGG Loan Documents, thereby precipitating an Event of Default under the Financing Agreement.

36.     On or about December 4, 2019, MGG sent the Debtor a notice of default and reservation of rights.

37.     The Notice of Default lists three separate Events of Default under the Financing Agreement: (i) failure to make the required installment payment due on September 30, 2019; (ii) failure to pay interest on the MGG Loan as required under § 2.04(c) of the Financing Agreement on October 1, 2019, November 1, 2019, and December 1, 2019; and (iii) failure to pay the Loan Servicing Fee under § 2.06(c) of the Financing Agreement, which came due on October 31, 2019.

**Mr. Zayat Admits that the Sales of the Debtor's Assets were Deliberately Concealed and that the Debtor was Insolvent**

38.     Mr. Zayat admitted that the sale of the Debtor's assets had been concealed from MGG until MGG had begun inquiring into the status of the Debtor's assets.

39.     On January 12, 2020, Mr. Zayat sent an e-mail to Kevin Griffin of MGG admitting that he had concealed the sale of the Debtor's equine assets:

> It is tough for me to get myself to write this letter.  But I consider myself to be an honorable and straightforward person.

6

It kills me and tore me apart, not being transparent with you.

\* \* \*

Your word to me, that your word is your bond was like a sword in my heart. Therefore, I did not want while I was half asleep to have a discussions why I did not disclose to you why we had to sell some assets (in order for us to fund and continue to operate Zayat Stables and continue to function for Zayat Stables until such a time where any of my routes either Piper Jaffray or the CVC or FocalPoint China funding materialize to fix up all these issues, and allowing myself the time to find the capital to get you paid in full.

40.    Mr. Zayat further stated that the reason why the Debtor's assets were sold was because the Debtor was insolvent and had been for some time.  For example, Mr. Zayat represented as follows:

God knows not only I have used every single savings and cash I have in my bank accounts (business and personal) to fund and operate Zayat Stables.  BUT my personal and financial situation of depleting and funding Zayat Stables. I have exhausted my personal bank accounts, my savings.  I am late on my own personal bills, I have borrowed money from not only friends but have even gone to Cash Advance lenders and borrowed money at ridiculous 30-60% interest rate to fund Zayat Stables. . . I haven't even paid my employees for months.  My son goes 4 months without being paid. . . There isn't a person that I know of that would've fought so hard and be honorable to save this company — and working on numerous routes to find this capital.

\* \* \*

Even on a personal note, not only I borrowed from friends and predatory lenders (Cash Advance Merchants).  I even took a personal loan against my house from a Rabbi that I helped for years and contributed hundreds of thousands through the years for his organization. He offered to help after I confided in him my issues. That I needed to fund my company to operate to attract an equity investor to help me survive and weather the cash flow crunch and paying my bills/lenders.  I have used every trick in the book to find money / Borrow money.  Just so I can operate Zayat Stables and float it for the last 15 months to allow myself the chance to get a partner that would make my company financially stronger.

41.     By August 2018, the Debtor was even relying on a family inheritance of Mr. Zayat's wife to remain economically afloat.

42.     Around the same time, Mr. Zayat also began seeking loans for the Debtor from his family members.  In a July 2018 email correspondence, for example, with his brother Sherif El Zayat, Ahmed Zayat was pleading with his brother for money to make payments on behalf of the Debtor in order to "survive for this week."

43.     Likewise, in a January 2019 email to his brother, Ahmed Zayat asked for $1.5 million by January 31 and another $1.5 million by March 1, in order for the Debtor to "operate and survive" and to avoid a "lawsuit against [the Debtor] for not paying."

**MGG Obtains a Multi-Million-Dollar Judgment against the Debtor**

44.     On January 21, 2020, MGG commenced an action against the Debtor by filing a complaint in the Fayette Circuit Court for the Commonwealth of Kentucky seeking to recover damages for the MGG Loan ("Kentucky Litigation").

45.     On February 11, 2020, MGG filed an amended complaint seeking damages against Mr. Zayat and Justin to recover additional damages in connection with the MGG Loan, including with respect to the sale of the Debtor's assets that were pledged as collateral for the MGG Loan.

46.     On June 10, 2021, the Kentucky state court entered judgment against the Debtor and in favor of MGG in the amount of $24,534,166.13.

47.     The Events of Default underlying the judgment in the Kentucky Litigation were primarily caused by the Debtor's intentional concealment of its transfers.

48.     In addition to MGG, the Debtor was obligated to multiple unsecured creditors.

ME1 42312018v.2

## FIRST CAUSE OF ACTION
### Avoidance of Actual Fraudulent Transfer
### Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550

49.    The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs hereof with the same force and effect as if fully set forth herein.

50.    Section 548(a)(1)(A) of the Bankruptcy Code provides that:

> (a)(l) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

51.    The Solomini Transfer to McMahon is a fraudulent transfer that should be avoided pursuant to § 548(a)(1)(A) of the Bankruptcy Code, and is recoverable pursuant to § 550 of the Bankruptcy Code.

52.    Solomini was the Debtor's Property and is therefore, an asset of the Debtor's bankruptcy estate.

53.    The Solomini Transfer occurred on December 3, 2019, which is within two years of the September 14, 2020 Petition Date.

54.    The Debtor either voluntarily or involuntary made the Solomini Transfer with the actual intent to hinder, delay, or defraud its creditors, including but not limited to its largest creditor MGG, whose loan to the Debtor was secured by, among other assets, Solomini, as an equine asset.

55.    The Debtor's sole member has admitted in emails that he concealed the Solomini from MGG.

56.     Accordingly, the Trustee is entitled to avoid and recover Solomini, or its equivalent value, from McMahon for the benefit of the Debtor's bankruptcy estate and its creditors.

### SECOND CAUSE OF ACTION
### Avoidance of Actual Fraudulent Transfer
### Pursuant to 11 U.S.C. §§ 544(b), 550 and N.J.S.A. 25:2-25(a)(1)

57.     The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

58.     Section 544(b)(1) of the Bankruptcy Code provides that a trustee may avoid "a transfer of an interest of the debtor in property or any obligation that is incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable." "[A]pplicable law" includes state law.

59.     As of the Petition Date, American Express held an allowable unsecured claim against the Debtor.  American Express later filed its filed proof of claim, which is Claim No. 3-1. The Debtor is obligated to numerous other unsecured creditors.

60.     Pursuant to N.J.S.A. 25:2-25(a)(1):

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> With actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

61.     The Solomini Transfer is a fraudulent transfer that should be avoided pursuant to New Jersey law and is recoverable pursuant to § 550 of the Bankruptcy Code.

62.     Solomini was the Debtor's property and is therefore, an asset of the Debtor's bankruptcy estate.

63.     The Debtor made the Solomini Transfer with the actual intent to hinder, delay, or defraud its creditors, including but not limited to its largest creditor MGG, whose loan to the Debtor was secured by, among other assets, Solomini, as an equine asset.

64.     The Debtor's sole member, has admitted in emails that he concealed the Solomini Transfer from MGG.

65.     Accordingly, the Trustee is entitled to avoid and recover Solomini, or its equivalent value, from McMahon for the benefit of the Debtor's bankruptcy estate and its creditors.

**THIRD CAUSE OF ACTION**
**Avoidance of Actual Fraudulent Transfer**
**Pursuant to 11 U.S.C. §§ 544(b), 550 and  K.R.S. 378A.040(1)(a)**

66.     The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

67.     Section 544(b)(1) of the Bankruptcy Code provides that a trustee may avoid "a transfer of an interest of the debtor in property or any obligation that is incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable." "[A]pplicable law" includes state law.

68.     As of the Petition Date, American Express held an allowable unsecured claim against the Debtor.  American Express later filed its filed proof of claim, which is Claim No. 3-1.  The Debtor is obligated to numerous other unsecured creditors.

69.     Pursuant to K.R.S. 378A.040(1)(a):

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> With actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

11

70.    The Solomini Transfer is a fraudulent transfer that should be avoided pursuant to Kentucky law and therefore, is recoverable pursuant to § 550 of the Bankruptcy Code.

71.    Solomini was the Debtor's property and is therefore, an asset of the Debtor's bankruptcy estate.

72.    The Debtor made the Solomini Transfer with the actual intent to hinder, delay, or defraud its creditors, including but not limited to its largest creditor MGG, whose loan to the Debtor was secured by, among other assets, Solomini, as an equine asset.

73.    The Debtor's sole member has admitted in emails that he concealed the Solomini Transfer from MGG.

74.    Accordingly, the Trustee is entitled to avoid and recover Solomini, or its equivalent value, from McMahon for the benefit of the Debtor's bankruptcy estate and its creditors.

## FOURTH CAUSE OF ACTION
### Avoidance of Constructive Fraudulent Transfer
### Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550

75.    The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs hereof with the same force and effect as if fully set forth herein.

76.    Section 548(a)(1)(B) of the Bankruptcy Code provides that:

> (a)(l) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . .

> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such

transfer or obligation;

(II) was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

77.    The Solomini Transfer is a constructively fraudulent transfer that should be avoided pursuant to § 548(a)(1)(B) of the Bankruptcy Code, and is recoverable pursuant to § 550 of the Bankruptcy Code.

78.    Solomini was the Debtor's property and is therefore, an asset of the Debtor's bankruptcy estate.

79.    The Solomini Transfer occurred on December 3, 2019, which is within two years before the September 14, 2020 Petition Date.

80.    The $250,000 purchase price for Solomini does not reflect the fair market value of Solomini.

81.    An independent appraisal commissioned by the Debtor in or about July 2019 valued Solomini in excess of $3 million.

82.    Another appraisal conducted in December of 2019, roughly contemporaneously with the Solomini Transfer, valued the Debtor's 50% interest in Solomini at $500,000.

83.    Accordingly, in exchange for the Solomini Transfer the Debtor received less than reasonably equivalent value.

84.    The Debtor's sole member has admitted in emails that he concealed the Solomini Transfer from MGG.

13

85.     The Debtor's sole member also admitted in emails that the Debtor's assets were sold because the Debtor was insolvent and had been for some time.

86.     The Debtor's sole member also admitted in emails that the Debtor could not pay its debts as they became due, leading Mr. Zayat to plead with his brother, among others, for cash infusions.

87.     Therefore, in executing the Solomini Transfer, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was unreasonably small capital, or the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

88.     Accordingly, the Trustee is entitled to avoid and recover Solomini, or its equivalent value, from McMahon for the benefit of the Debtor's bankruptcy estate and its creditors.

### FIFTH CAUSE OF ACTION
### Avoidance of Constructive Fraudulent Transfer
### Pursuant to 11 U.S.C. §§ 544(b), 550 and N.J.S.A. 25:2-25(a)(2)

89.     The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

90.     Section 544(b)(1) of the Bankruptcy Code provides that a trustee may avoid "a transfer of an interest of the debtor in property or any obligation that is incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable." "[A]pplicable law" includes state law.

91.     As of the Petition Date, American Express held an allowable unsecured claim against the Debtor.  American Express later filed its filed proof of claim, which is Claim No. 3-1. The Debtor is obligated to numerous other unsecured creditors.

14

92.     Pursuant to <u>N.J.S.A.</u> 25:2-25(a)(2):

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

93.     The Solomini Transfer is a constructive fraudulent transfer that should be avoided pursuant to New Jersey law and is therefore, recoverable pursuant to § 550 of the Bankruptcy Code.

94.     The $250,000 purchase price for Solomini does not reflect the fair market value of Solomini.

95.     An independent appraisal commissioned by the Debtor in or about July 2019 valued Solomini in excess of $3 million.

96.     Another appraisal conducted in December of 2019, roughly contemporaneously with the Solomini Transfer, valued the Debtor's 50% interest in Solomini at $500,000.

97.     Accordingly, in exchange for the Solomini Transfer the Debtor received less than reasonably equivalent value.

98.     The Debtor's sole member has admitted in emails that he concealed the Solomini Transfer from MGG.

99.     The Debtor's sole member also admitted in emails that the Debtor's assets were sold because the Debtor was insolvent and had been for some time.

15

100.    The Debtor's sole member also admitted in emails that the Debtor could not pay its debts as they became due, leading Mr. Zayat to plead with his brother for cash infusions.

101.    Therefore, in executing the Solomini Transfer, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was unreasonably small capital, or the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

102.    Accordingly, the Trustee is entitled to avoid and recover Solomini, or its equivalent value, from McMahon for the benefit of the Debtor's bankruptcy estate and its creditors.

## SIXTH CAUSE OF ACTION
### Avoidance of Constructive Fraudulent Transfer
### Pursuant to 11 U.S.C. §§ 544(b), 550 and K.R.S. 378A.040(1)(b)

103.    The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

104.    Section 544(b)(1) of the Bankruptcy Code provides that a trustee may avoid "a transfer of an interest of the debtor in property or any obligation that is incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable." "[A]pplicable law" includes state law.

105.    As of the Petition Date, American Express held an allowable unsecured claim against the Debtor.  American Express later filed its filed proof of claim, which is Claim No. 3-1. The Debtor is obligated to numerous other unsecured creditors.

106.    Pursuant to K.R.S. 378A.040(1)(b):

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

16

Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

107.     The Solomini Transfer is a constructive fraudulent transfer that should be avoided pursuant to Kentucky law and is therefore, recoverable pursuant to § 550 of the Bankruptcy Code.

108.     The $250,000 purchase price for Solomini does not reflect the fair market value of Solomini.

109.     An independent appraisal commissioned by the Debtor in or about July 2019 valued Solomini in excess of $3 million.

110.     Another appraisal conducted in December of 2019, roughly contemporaneously with the Solomini Transfer, valued the Debtor's 50% interest in Solomini at $500,000.

111.     Accordingly, in exchange for the Solomini Transfer the Debtor received less than reasonably equivalent value.

112.     The Debtor's sole member has admitted in emails that he concealed the Solomini Transfer from MGG.

113.     The Debtor's sole member also admitted in emails that the Debtor's assets were sold because the Debtor was insolvent and had been for some time.

114.     The Debtor's sole member also admitted in emails that the Debtor could not pay its debts as they became due, leading Mr. Zayat to plead with his brother for cash infusions.

ME1 42312018v.2

115.    Therefore, in executing the Solomini Transfer, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was unreasonably small capital, or the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

116.    Accordingly, the Trustee is entitled to avoid and recover Solomini, or its equivalent value, from McMahon for the benefit of the Debtor's bankruptcy estate and its creditors.

### SEVENTH CAUSE OF ACTION
### Avoidance of Constructive Fraudulent Transfer
### Pursuant to 11 U.S.C. §§ 544(b), 550 and N.J.S.A. 25:2-27(a)

117.    The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

118.    Section 544(b)(1) of the Bankruptcy Code provides that a trustee may avoid "a transfer of an interest of the debtor in property or any obligation that is incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable." "[A]pplicable law" includes state law.

119.    As of the Petition Date, American Express held an allowable unsecured claim against the Debtor.  American Express later filed its filed proof of claim, which is Claim No. 3-1. The Debtor is obligated to numerous other unsecured creditors.

120.    Under N.J.S.A. 25:2-27(a):

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

18

121.    Before the Solomini Transfer occurred, the Debtor had already pledged its assets to MGG as collateral for the loan from MGG.  Thus, MGG's claim arose before the Solomini Transfer was made.

122.    The $250,000 purchase price for Solomini does not reflect the fair market value of Solomini.

123.    An independent appraisal commissioned by the Debtor in or about July 2019 valued Solomini in excess of $3 million.

124.    Another appraisal conducted in December of 2019, roughly contemporaneously with the Solomini Transfer, valued the Debtor's 50% interest in Solomini at $500,000.

125.    Therefore, in exchange for the Solomini Transfer the Debtor received less than reasonably equivalent value

126.    Accordingly, the Trustee is entitled to avoid and recover Solomini, or its equivalent value, from McMahon for the benefit of the Debtor's bankruptcy estate and its creditors.

**EIGHTH CAUSE OF ACTION**
**Avoidance of Constructive Fraudulent Transfers**
**Pursuant to 11 U.S.C. §§ 544(b), 550 and K.R.S. 378A.050(1)**

127.    The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

128.    Section 544(b)(1) of the Bankruptcy Code provides that a trustee may avoid "a transfer of an interest of the debtor in property or any obligation that is incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable." "[A]pplicable law" includes state law.

19

129.    As of the Petition Date, American Express held an allowable unsecured claim against the Debtor.  American Express later filed its filed proof of claim, which is Claim No. 3-1. The Debtor is obligated to numerous other unsecured creditors.

130.    Under K.R.S. 378A.050(1):

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

131.    Before the Solomini Transfer occurred, the Debtor had already pledged its assets to MGG as collateral for the loan from MGG.  Thus, MGG's claim arose before the Solomini Transfer was made.

132.    The $250,000 purchase price for Solomini does not reflect the fair market value of Solomini.

133.    An independent appraisal commissioned by the Debtor in or about July 2019 valued Solomini in excess of $3 million.

134.    Another appraisal conducted in December of 2019, roughly contemporaneously with the Solomini Transfer, valued the Debtor's 50% interest in Solomini at $500,000.

135.    Therefore, in exchange for the Solomini Transfer the Debtor received less than reasonably equivalent value.

136.    Accordingly, the Trustee is entitled to avoid and recover Solomini, or its equivalent value, from McMahon for the benefit of the Debtor's bankruptcy estate and its creditors.

ME1 42312018v.2

## NINTH CAUSE OF ACTION
### Unjust Enrichment

137.     The Trustee repeats, reiterates, and realleges each and every allegation as set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

138.     By the wrongful acts and omissions specifically set forth herein, McMahon was unjustly enriched at the expense of and to the detriment of the Debtor.

139.     McMahon was unjustly enriched without justification as a result of receiving the Solomini Transfer—the Debtor's property—and obtaining pecuniary benefits in connection therewith.

140.     The Debtor has been damaged by McMahon's unjust enrichment.

141.     The Trustee, as a representative of the Debtor, seeks restitution from McMahon.

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests entry of a Judgment against the McMahon as follows:

A.      On the First through Eighth Causes of Action, for the avoidance and recovery of the Solomini Transfer;

B.      On the Ninth Cause of Action, for unjust enrichment;

C.      Awarding the Trustee his attorney's fees, costs and other expenses incurred in this action; and

D.      On each Cause of Action, granting the Trustee such other and further relief as the Court may deem appropriate and just.

ME1 42312018v.2

Dated: October 8, 2022

**MCCARTER & ENGLISH, LLP**
*Attorneys for Chapter 7 Trustee*

By:     */s/ Clement J. Farley*
        Clement J. Farley, Esq.
        Geoffrey E. Lynott, Esq.
        Phillip S. Pavlick, Esq.
        Four Gateway Center
        100 Mulberry Street
        Newark, NJ 07102
        Telephone: (973) 622-4444
        Facsimile:  (973) 624-7070
        Email: cfarley@mccarter.com
              glynott@mccarter.com
              ppavlick@mccarter.com

22